L. & E. MILLER to the use of J. B. CARLISLE *vs.* THE LAND AND LUMBER COMPANY OF NORTH CAROLINA.

1. If goods are sold to a party, on the representations of one professing to be his agent and are afterwards delivered to such party and invoiced to him and the invoice received and the goods are used by him, he is bound for their value, and under such circumstances it is immaterial whether the person professing to be agent was such or not.

2. In order to avoid such responsibility, the party to whom the goods were sent should have, on the receipt of the invoice, promptly refused to receive otherwise silence gives consent under the maxim *qui tacet clamat.*

3. The invoice was notice that the credit was given to such party.

4. In such case it is immaterial that the officers of such party (a corporation) did not intend to induce the seller to believe that the corporation had bought and would pay for the goods, or that they would not have kept the goods if they had not known that the corporation was bound to pay the seller for them.

5. The rule is, that when one, by his conduct, unintentionally, gives another reasonable ground to believe that a certain state of facts exists, and the other acts

on the belief so induced, that he will be damaged if it is not true, the person so inducing is estopped as to the other, afterwards to deny the existence of such state of facts.

5. The retention of the goods and silence after receipt of invoice, furnished reasonable ground to cause the sellers to believe that the corporation ratified the sale and may naturally have prevented them from taking such action as they otherwise would for their security.

6. It was erroneous, to permit the plaintiffs on the trial below to testify that such agent informed them before the sale, that he had in his possession a letter from an officer of the defendant authorizing him to purchase the goods for it—such evidence is not liable to animadversion as evidence to prove the contents of a writing by parol, the evidence not being directed to show that there was a genuine letter, containing such contents, but merely the representations of the agent as to the contents of a letter, *in confirmation of the plaintiff's evidence* that the credit had been given to the corporation and not to the agent.

This was a civil action tried before His Honor Judge Pool, and a jury at Spring Term, 1871, of Pasquotank Superior Court, and was brought to recover the value of certain goods which the plaintiffs alleged had been sold and delivered by them to the defendant.

On trial, the plaintiffs having introduced testimony tending to prove that they gave credit to the defendant, to confirm the evidence of the witness (one of the plaintiffs), it was proposed to show that one Ambrister negotiated with plaintiffs for the purchase of the goods on behalf of the defendant, representing himself as its agent and that he showed orders [called in the exceptions and opinion letters, but in the deposition orders] from the officers of the Company authorizing him to purchase such goods for the company, and that the plaintiffs gave credit to the Company upon the strength of the orders or letters—the letters not being produced on record—the defendant objected to the evidence on the ground that it was an attempt to introduce parol evidence of a writing without producing it or accounting for its non-production. This evidence, however, was received by His Honor and the defendant excepted.

There was evidence tending to prove that plaintiffs sold the goods to the defendant and gave it credit therefore; that they invoiced the goods in the name of the defendant and forwarded the invoice to defendant, and also shipped the goods to defendant, which were received and used by defendant.

It was also admitted that Ambrister was a stockholder in the Company.

There was much rebutting testimony offered by defendant to show that Ambrister had no authority to act in any manner as defendant's agent, and that neither the defendant or its officers had ever ratified any act of Ambrister as such, which it is deemed unnecessary to recapitulate in detail, as the case in this Court turned upon the question of evidence and His Honor's charge.

The defendant requested His Honor the following instructions to the jury, viz:

1. That there can be no recovery in this case, unles John G. Ambrister was the agent of the defendant.

2. That there is no legal evidence in this case showing that John G. Ambrister was directly or indirectly authorized to buy the goods of L. & E. Miller or any one else for them, or that he ever was their agent for any purpose whatever, and that no act of his has ever been ratified by the defendant or any of its officers.

His Honor declined to give these instructions to the jury, for which the defendant excepted.

His Honor instructed the jury, that if from the testimony they believed that John G. Ambrister had an agreement with L. & E. Miller that the goods bought by him and shipped to the defendant should be charged to his own account, and afterwards be credited upon the notes held by Peter Ambrister & Co., the defendant was entitled to a verdict.

But if they believed that no such agreement had been made, and that L. & E. Miller sold to John G. Ambrister, as the agent of the defendant, and the defendant afterwards received

the goods, that it became responsible for them by thus ratifying the act of Ambrister, even though he had never been authorized to buy goods for them. The defendant excepted to the charge.

Under the instructions of His Honor, the jury found a verdict in favor of the plaintiffs, and from the judgment rendered thereon the defendant appealed.

*Smith* & *Shaw* for the appellant argued :

That in order to entitle the plaintiff to recover on the idea of a ratification of Ambrister's acts, done professedly as the defendant's agent, His Honor should have charged that the defendant enjoyed the benefit of the goods after being fixed with a *knowledge* of such action by Ambrister, of which there was no evidence.

They also argued a point of evidence which appears from receiving no observation in the opinion, to have been waived.*

*Bragg* & *Strong* for the appellees filed the following brief:

1. Ambrister's declarations are admissible as part of the *res gestae.*

2. The facts that the goods were *purchased* by John G. Ambrister, that bills were sent to the defendant, in which the goods were charged to it, and that said goods were used by the defendant, *were some* evidence of the agency at the time of the purchase, or of a confirmation afterwards; enough *at least*, to authorize the judge to admit the declarations of Ambrister. The evidence of the defendant is not to be considered. *State* v. *Dulla*, Phil. 437. *State* v. *Andrew*, Ib. 205. *Creech* v.

---

*NOTE.—The Attorney General regrets that owing to the bad chirography o the brief filed by appellant, he could not publish it in full.

*McRea*, 5 Jones, 122. *Scott* v. *Brown*, Ib. 406. *State* v. *Dick*, 2 Winston, 45.

3. Ratification of contract. Angel and Ames, 238, 241, especially 240 and cases cited.

4. As to what is some evidence. *State* v. *Allen*, 3 Jones, 257, *State* v. *Long*, 7 Jones. 24.

That portion of the Judge's additional statement not responsive to the letter addressed to him cannot be considered. But if it can, the evidence set forth therein as having been objected to, to-wit: that no credit was entered upon the note which Ambrister held against the Millers, is competent as tending to negative the idea that he purchased on his own account. Ordinarily men do not allow notes to stand open for the full amount against them, when they are entitled to a credit for $1300.

RODMAN, J. We think the defendant exceptions to the instructions given by the Judge below cannot be sustained.

The jury found that the goods were sold by plaintiffs on the credit of the defendant, upon the request of a person representing himself as its agent, that they were sent to and received by defendant, that at or about the time of their receipt, the officers of the company also received invoices sent by plaintiffs, in which the defendant was charged as debtor for the price of the goods, and that afterwards defendant used the goods. We agree with the Judge that with these facts in proof, it was immaterial whether Ambrister was ever authorized to purchase the goods for the company or not, by keeping them with notice that the plaintiff had sold them to the company and upon its credit, the company became liable for the price. If it did not mean to become liable, it should at once on the receipt of the invoices have repudiated the purchase and refused to receive the goods. Instead of doing so, by silence it allowed the plaintiffs to believe that it consented to the purchase and undertook to pay.

Under such circumstances, "*qui tacet clamat*," silence is consent. It is no defence to say that the defendant's officers knew nothing of the representations made by Ambrister to the plaintiffs, and that they were deceived by his representations to them, that he had bought the goods on his own credit. The invoice was notice that the plaintiff sold to, and credited the company. It is also immaterial that Ambrister had no authority to buy for the defendant. and that the officers of the company did not intend to induce the plaintiffs to believe that it had bought and would pay for the goods, or that they would not have kept the goods if they had known that the company was to pay plaintiffs for them. The rule is, that when one by his conduct, unintentionally gives another reasonable ground to believe a certain state of facts, and the other so acts on that belief that he will be damaged if it is not true, the person so conducting is estopped as to the other, afterwards to deny that state of facts. This rule is so reasonable as not to require the support of authority.

It is supported however by several, among which, as being very pertinent, we select *Cornish* v. *Abingdon*, 4 Hurl & Norman Exch. 549.

The keeping of the goods and the silence of the defendant after the receipt of the invoices were a reasonable ground for the plaintiffs to believe that the Company ratified the sale, and may naturally have prevented them from taking such steps as as they otherwise would have taken for their security.

As to the question of evidence, the Judge allowed plaintiff to testify that Ambrister told them that he had a letter from an officer of the company, authorizing him to purchase the goods for it. The defendant contended that this was proving the contents of a writing by parol. This is a mistake.

The evidence was not directed to show that there was any genuine letter with such contents, but merely the representations of Ambrister as the contents of a letter, in confirmation of the plaintiff's evidence, that credit had been given to the

company and and not to Ambrister. Under the circumstances it was immaterial whether the letter had existed or not.

We think the evidence was admissible.

There is no error.

PER CURIAM.                                     Judgment affirmed.