METZGER BROS. v. W. E. WHITEHURST.

(Filed 18 March, 1908).

1. **Principal and Agent—Liability of Principal—Agent's Unauthorized Acts.**

   One may unintentionally, by his conduct, become liable to innocent third persons who have parted with their property on account of the acts of another, whom he has permitted to act as his agent.

2. **Same—Evidence.**

   Defendant sold his retail liquor business to one J. and continued to take out the license in his own name. Plaintiff, during this time, sold several invoices to J., but upon the occasion respecting the shipment in question there was conflicting evidence as to whether plaintiff told J. that he would not ship any more liquor upon his credit, but would do so upon the credit of defendant, as he then noticed the license to sell was in defendant's name, and J. assented. The shipment was made, charged and invoiced to defendant, and, under a general order of defendant respecting such shipments, was delivered by the railroad agent to J.: *Held,* evidence sufficient to sustain a verdict for plaintiff.

ACTION tried before *Neal, J.,* and a jury, at October Term, 1907, of EDGECOMBE.

Plaintiffs sue to recover the price of goods alleged to have been sold and delivered. Defendant denies that he purchased the goods or is in any way liable for them. The testimony tended to show that defendant applied for and obtained from the county commissioners, January, 1906, and July, 1906, license to sell spirituous liquors at Conetoe, in Edgecombe County. One of the plaintiffs testified that he had sold goods to James, who was in charge of the business from February to October, 1906, and that he paid for them; that he was under the impression that the bar was the property of James. On 22 October he learned that it was defendant's bar. The license posted in the bar was in the name of Whitehurst; so was the sign on the sidewalk. He told James, 22 October, 1906, that he could not sell him any more goods; that he found the revenue license showed it was Whitehurst's business.

He took this and the subsequent orders in Whitehurst's name. The invoices and bills of lading for goods subsequent to October were sent to Whitehurst—mailed to him at Conetoe. James never told him not to ship goods to Whitehurst—that he (Whitehurst) had no interest in the business. James gave his personal check for amount of account. After it was due it went to protest. Witness says that he knows defendant; had seen him in the bar February, 1906.

The freight agent at Conetoe testified that the goods sued for came to Whitehurst and were delivered by him to James. Whitehurst sold out to James; and he then told witness to deliver his goods to James. He said James had taken charge of his business. Heard, in January, that James had bought out the business. Defendant testified that he sold out to James December, 1905, or January, 1906, after getting license, and he took out license in July for James' convenience. Never saw plaintiff until at trial; never saw bills of lading for goods or received any invoices; did not know plaintiffs were shipping goods in his name. When he sold out he gave notice to all with whom he had been dealing, but did not notify plaintiffs, because he had not dealt with them.

J. C. James testified that he bought out defendant 1 January, 1906; advertised business in his own name; bought from plaintiffs in February and about every thirty days thereafter. Plaintiff B. F. Metzger asked witness if he had better not ship in Whitehurst's name, as the license was in his name. Witness told him no, that Whitehurst had nothing to do with the business. The invoices were sent to witness; Whitehurst never saw them—had nothing to do with business. About Christmas witness gave plaintiffs his check for the account in suit. It was not paid. There was evidence tending to corroborate the testimony on each side.

His Honor submitted the case to the jury in two aspects. He first instructed them: "Your first inquiry will be, Was the business the property and owned by the defendant? If

you answer this inquiry 'Yes,' you should answer the issue 'Yes' and assess the amount. If you answer the inquiry 'No,' then proceed further and ascertain whether defendant so acted as to lead plaintiffs to believe that this was his business." To this defendant excepted. In this aspect of the case his Honor, at the request of defendant, instructed the jury: "If the jury shall find as a fact that the business did not belong to the defendant Whitehurst, but in fact was conducted by J. C. James as his own, then the defendant Whitehurst would not be chargeable with the value of said goods, unless you should find further as a fact that the defendant Whitehurst, by his acts and conduct, reasonably led the plaintiffs to believe that the business was his or that his credit was behind the same, and they made the sale in question relying upon this belief." (Given).

"That if, at the time of the sale of said goods, the plaintiffs extended credit to the said J. C. James and looked to him for the payment of the same, then the defendant Whitehurst would not be liable, and the jury should answer the issue 'No.' " (This prayer was given as amended by the insertion of the words "and not to Whitehurst" after the words "looked to him for the payment of the same"). Exception by defendant.

In the second aspect his Honor instructed the jury: "If Whitehurst so acted as to induce plaintiffs to believe that James was his agent, he is liable for all his acts in the same manner as if he was actually his agent, and he would in that event be estopped from denying the existence of the agency. The court charges you, if you find by the greater weight of the testimony that the defendant Whitehurst knew goods were being ordered in his name by James, and the plaintiffs shipped the goods upon the credit of Whitehurst to Whitehurst himself, and Whitehurst ordered them turned over to James, then Whitehurst would be liable for such shipments, and you will answer the issue 'Yes, and the value of the goods

shipped.' "   His Honor further instructed the jury that, if
Whitehurst permitted the sign to remain over the store after
he claims to have sold to James, and that plaintiffs knew that
the license was taken out by Whitehurst, and were induced
thereby to believe that James was Whitehurst's agent, he
would be liable, etc.   He also instructed them that, if White-
hurst gave instructions to the agent at Conetoe to deliver to
James all whiskey shipped to Whitehurst, and that the goods
were shipped to him, and the agent, in consequence of such
instruction, delivered the goods to James, then Whitehurst
would be estopped, etc.   Defendant excepted.   Defendant
requested the court to charge the jury that upon the whole
evidence in the case the plaintiffs could not recover, and duly
excepted to his refusal to do so.   The jury answered the issue
for plaintiffs.   Defendant duly excepted, assigning errors in
the charge and refusal to charge as requested.   Judgment for
plaintiffs.   Defendant appealed.

*W. O. Howard* for plaintiffs.
*Gilliam & Gilliam* for defendant.

CONNOR, J., after stating the case: In view of the uncon-
tradicted evidence and the instructions of his Honor, we may
infer that the jury found the following facts: Whitehurst
was engaged in the business of selling spirituous liquors at
Conetoe, in Edgecombe County, prior to 1 January, 1906.
He took out license to continue the business from January to
July and from July to 31 December, 1906.   The sign over
the store had his name upon it.   He sold out to James in
January, 1906.   Plaintiffs sold to James goods from Feb-
ruary to 22 October, 1906, not knowing Whitehurst was in
the business.   Plaintiff B. F. Metzger, being in the store on
22 October, 1906, sold a bill of $71.60, which he charged to
Whitehurst and shipped to him, sending invoice and bill of
lading to him at Conetoe.   They afterwards made two other
sales, for which invoices and bills of lading were directed to

Whitehurst. The original bills of lading were introduced, showing the shipment to Whitehurst. These goods were delivered by the freight agent to James, in accordance with Whitehurst's order. Whitehurst says, without contradiction, that he knew nothing of either of the shipments. He does not deny having instructed the freight agent to deliver his goods to James. James says that he got the invoices; Whitehurst never saw them. The plaintiffs' bookkeeper says that the invoices were sent to Whitehurst at Conetoe—the last one to James' care. The foregoing facts may be taken as true, without much, if any, contradiction. Metzger says that, up to 22 October, he was under the impression that the bar was the property of James and that he sold to him; that on 22 October he told James that he could not sell him any more goods; that he had found out the license was in Whitehurst's name; that he took the orders in Whitehurst's name. James denies this, saying that plaintiff asked if he had better not ship in Whitehurst's name, as the license was in his name, and that he told plaintiff no, that Whitehurst had nothing to do with the business. In view of the evidence that the goods were shipped and bills of lading sent in Whitehurst's name, the jury were warranted in finding that Metzger's testimony in respect to this transaction was true. Assuming, therefore, that Whitehurst sold to James in January, 1906, does his conduct in taking out license in his own name in July, 1906, leaving James in charge of the business conducted under his license, leaving his name on the sign over the store, directing the freight agent to "deliver his goods to James," followed by the conduct of James in receiving and using the goods shipped and invoiced to Whitehurst, justify the conclusion reached by the jury, that the plaintiffs were reasonably induced to believe that James was acting as agent for Whitehurst? This view accepts as true Whitehurst's testimony and eliminates the theory that he in fact owned the business. In this aspect of the case the only contradictory

testimony is that of Metzger and James, 22 October, 1906. It is hardly probable that, if Metzger, after learning that the license was in Whitehurst's name and proposing to sell to him, had been told by James not to do so, that he (Whitehurst) had no interest in the business, he would have immediately shipped the goods to Whitehurst, and in November and December shipped other bills in the same way, amounting in all to $477. It is equally improbable that, if James' version of the conversation of 22 October is correct, he would have received the goods shipped and invoiced to Whitehurst. That they were so invoiced and billed seems to be established by plenary proof. The learned counsel for defendant insists that the order given by Whitehurst to the freight agent at Conetoe "to deliver his goods to James" cannot, with reason, be interpreted to apply to any other goods than those at that time in the warehouse. We do not think that the testimony of the freight agent should be so confined. He did not so understand the order, nor does it appear that Whitehurst had at that time any goods in the warehouse. That one may so act as to unintentionally become liable for the conduct of another whom he permits to hold himself out as his agent, when innocent third parties, relying upon such conduct, part with property, is elementary. His Honor, at defendant's request, correctly stated the law to the jury. The only question which has given us concern is whether the evidence brings the defendant within the rule. Plaintiffs cite *Miller v. Land Co.,* 66 N. C., 503. In that case it was denied that the person holding himself out as agent of defendant had any authority to buy the goods for defendant. As here, the goods were invoiced to defendant, who received the invoices and used the goods. As was said by *Rodman, J.,* "If it did not mean to become liable, it should at once, on receipt of the invoices, have repudiated the purchase and refused to receive the goods." · Here there is no evidence that Whitehurst received the invoices or the goods, and the distinction is clear. Did

the fact that he took out the license, placed James in charge of the business and instructed the freight agent to deliver his goods to James make him responsible to plaintiffs for the price of the goods sold to the agent in his name, upon his credit? Of course, if James' testimony in regard to the transaction of 22 October, 1906, was accepted by the jury, the verdict should, under his Honor's instructions, have been for defendant. "A person may by his words or conduct be estopped as against a third person to deny that another person is his agent." In that case the relation of principal and agent does not actually exist, although as against a third person who has been led to deal with the supposed agent in the belief that it exists the principal is estopped to deny its existence. Tiffany on Agency, p. 15. If plaintiff had examined the application for license made by Whitehurst to the county commissioners, he would have found a statement by him that he was trading as W. E. Whitehurst, 1 July, 1906, "and applying for a license to sell spirituous liquors" until 31 December of the same year, said to be conducted or carried on in that building of W. E. Whitehurst known as the W. E. Whitehurst brick store, situated in the town of Conetoe. He would have also found a certificate of six freeholders of said town stating that W. E. Whitehurst was a suitable person to conduct said business. When plaintiff did see the license issued to Whitehurst, on 22 October, 1906, he must have known that James could not, without violating the law, both State and Federal, carry on the business of selling liquor. That he called James' attention to the fact is conceded. There is evidence that James assented to and gave the order on that day, and on two other occasions, for liquor in Whitehurst's name; that the invoices were mailed to Whitehurst, the goods shipped under bill of lading to him and, by an order given the freight agent by Whitehurst, delivered to James. We cannot escape the conclusion that the jury was warranted in finding, upon this and other testimony, that the

defendant by his conduct put it in the power of James to hold himself out as his agent; that James, using the opportunity thus afforded him, induced the plaintiffs to sell and ship the goods on Whitehurst's credit and got possession of them from the freight agent. The liability of defendant rests upon the familiar principle that, when one of two innocent persons must sustain a loss, the law will place it upon the one whose conduct, either intentionally or negligently, misleads the other.

Upon an examination of the entire record we find no reversible error.

No Error.