A. J. MAXWELL, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA, v. SOUTHERN FIDELITY MUTUAL INSURANCE COMPANY.

(Filed 8 June, 1940.)

**1. Principal and Surety § 12—**

Ordinarily, a compensated surety is not relieved of liability by an extension of time given the principal unless it is prejudiced thereby, the rule that a surety is the favorite of the law applying only to gratuitous and not to corporate sureties.

**2. Same—Corporate surety held not discharged by extension of time given principal.**

This action was instituted on a continuing bond for the payment of gasoline taxes due the Department of Revenue, and the bond expressly provided that the Commissioner of Revenue might demand additional security in his discretion upon twenty days notice in writing. It appeared that upon demand made upon the principal, notes secured by chattel mortgages were given by the principal as additional security and an extension of time was granted, and that after defendant surety had knowledge of the giving of such additional security and the extension of time, the surety wrote the Commissioner of Revenue agreeing to the sale of a filling station owned by the principal, including chattels covered by the chattel mortgages given as additional security, provided the proceeds of the sale should be paid the Commissioner of Revenue and credited upon the taxes, and agreeing that the principal might execute a new series of notes for the balance of taxes due. *Held:* The giving of additional security benefited the surety, and if the Commissioner of Revenue had no right under the terms of the bond to take the additional security and extend the time, defendant surety ratified his acts in so doing and waived all defenses based thereon, and the surety is not discharged of its liability by reason thereof.

APPEAL by defendant from *Williams, J.,* at January Term, 1940, of WAKE. Affirmed.

This is a submission of controversy without action. N. C. Code, 1939 (Michie), section 626.

A brief statement of the facts is as follows: On 14 September, 1932, A. W. Couch, trading as West End Filling Station, Durham, N. C., as

principal, and the defendant as surety, executed and delivered to plaintiff a continuing bond in the amount of $2,500.00 conditioned for the payment of future taxes of the said Couch. That during the months of May and June, 1936, Couch became indebted to the State on account of gasoline taxes in the amount of $5,611.65. That said bond expressly provides that the Commissioner of Revenue should have the right to demand of the said Couch additional security for said taxes; "and the Commissioner of Revenue may, in his discretion, during the life of this bond, by giving twenty days notice in writing, demand of the Distributor named herein other or additional security." That pursuant to this provision of the bond, plaintiff, on 10 July, 1936, demanded and received from Couch additional security for said taxes, the security posted by Couch pursuant to said demand being notes executed by Home Oil Company, a corporation, and a chattel mortgage upon certain personal property of said Home Oil Company. That said collateral notes aggregated $5,641.36 and consisted of eleven $300.00 notes maturing at monthly intervals from said date and a twelfth note of $2,341.36 maturing at twelve months. That at the time said additional security was taken, plaintiff and Couch agreed that if said notes were paid as the same matured the said Couch would have the full twelve months within which to pay his said taxes, but that if default occurred in such payment then the chattel mortgage would be foreclosed and he and his said surety would be held liable for any balance of said taxes then remaining unpaid. That thereafter certain payments were made, but on 28 January, 1937, default having occurred in the payment of said note, plaintiff notified defendant of Couch's delinquency and demanded payment in full of the defendant's said bond.

Letter, in part, dated 29 January, 1937, is as follows: "Since demand has been made on Mr. Couch for the amount stated and no payment having been made, this Department has been instructed to make demand on you for the full amount of his bond."

On 4 February, 1937, representatives of defendant came to Raleigh and conferred with plaintiff and in said conference defendant learned for the first time of said collateral notes and chattel mortgage. Defendant then made no objection to said collateral security. And on 19 February, 1937, defendant wrote plaintiff a letter with respect to said taxes and said bond and advised plaintiff that in a conference with Couch defendant had agreed that Couch might execute a new series of notes for said taxes, but said notes were never executed, although the letter stated that defendant had agreed that Couch should immediately execute the same.

That on 20 March, 1937, defendant wrote plaintiff a letter, as follows: "MR. A. J. MAXWELL, Collector of Revenue,

Raleigh, N. C.

"DEAR SIR: With further reference to our letter of February 19th, we have communicated with Mr. W. A. Couch, in company with Mr. Llewellyn, who, we understand, is financially interested in Bond #MIS-1747, issued to W. A. Couch, trading as Home Oil Company, and in arrears in taxes in an amount of four thousand or more dollars, to your Department; and with whom conferences have been held relative to paying off all amortization of taxes to date. They are desirous of selling the service station at Creedmoor, which is now included in their mortgage to your Department and desire the sanction of the surety before selling. The surety sanctions the sale of service station property located at Creedmoor, with the understanding that the money from such sale is to be turned over to your office upon consummation of such sale. It is estimated and agreed that the amount to be turned over to you is to be a minimum of $250, with such amounts additional not yet determined, added thereto. It is agreed and understood that the minimum amount payable to your office shall not be less than $305, plus delinquent charges, which should run in the neighborhood of $325. The surety further agrees and understands that the payment of this money warrants the refinancing of the W. A. Couch, trading as West End Filling Station, notes and a new agreement is to be entered into upon sanction of your office and the surety.

Yours truly,

SOUTHERN FIDELITY MUTUAL INSURANCE CO.,
A. MOORE SHEARIN, *Secretary and Treasurer."*

That thereafter plaintiff continued his efforts to collect said taxes from said Couch and from sales of said mortgaged property until 24 May, 1939, when it became apparent that no further sums could be accepted from either source and thereupon plaintiff filled out defendant's regular form of proof of loss and filed the same with defendant in the amount of said bond ($2,500.00). That on 6 July, 1939, defendant denied said claim and refused to pay the same. That defendant did not object to the taking of said collateral notes and chattel mortgage until after plaintiff had filed said claim with it.

That after having received notice of said collateral on 4 February, 1937, defendant, on 19 February, 1937, advised plaintiff by letter that it had agreed that Couch might execute a new series of notes for said taxes. Defendant claimed the benefit of said chattel mortgage and demanded that the proceeds of the sale of the property included therein be credited upon the taxes secured by its said bond, those proceeds being the pro-

ceeds of sale of property owned, not by Couch, but by the Home Oil Company, a corporation. The reason as stated was that it thought that Couch would pay the State the money quicker than he would pay defendant if defendant paid plaintiff the amount of said bond. It is agreed that the net balance due and owing upon said taxes is $3,089.89, which is in excess of the penal sum of the bond here involved.

The judgment of the court below is as follows: "This cause coming on to be heard by the undersigned judge of the Superior Court of North Carolina, regularly assigned to hold the Superior Courts of the Seventh Judicial District and presiding at said term, and being heard upon the statement of controversy without action filed by the parties, after considering the arguments and briefs of counsel, the court is of the opinion that plaintiff is entitled to recover of defendant the full penal amount of the bond which is the subject of this controversy, it appearing that the taxes due plaintiff and secured by said bond are in excess of said amount: It is therefore, on motion of L. O. Gregory, Assistant Attorney-General, attorney for plaintiff, ordered, adjudged and decreed: (1) That plaintiff have and recover of defendant the sum of $2,500.00, with interest from date at the rate of six per cent per annum until paid. (2) That defendant pay the costs hereof to be taxed by the clerk. This the 25th day of January, 1940. Clawson L. Williams, Judge of the Superior Court."

See Motor Vehicle Gasoline Tax, N. C. Code, 1939 (Michie), sec. 2613 (i 12), et seq.

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material one and necessary facts will be considered in the opinion.

*Attorney-General McMullan and Assistant Attorney-General Gregory for plaintiff.*

*M. Hugh Thompson for defendant.*

CLARKSON, J. The only question necessary to be considered to determine this appeal is: Did the extension of time of payment of the amount due and payable from A. W. Couch, principal, on 10 July, 1936, and the taking of said chattel mortgage in the manner and form aforesaid, operate to discharge the defendant surety of its liability? We think not.

The defendant is a paid corporate surety. In *Loan Assn. v. Davis,* 192 N. C., 108 (113), the following is written as a "well-settled" principle: "The law does not have the same solicitude for corporations engaged in giving indemnity bonds for profit as it does for the individual surety who voluntarily undertakes to answer for the obligations of another. Although calling themselves sureties, such corporations are

in fact insurers, and in determining their rights and liabilities, the rules peculiar to suretyship do not apply." See 193 N. C., 710.

Citing authorities of a large majority of the states, including the above North Carolina case and United States Supreme Court cases, in 94 A. L. R., 876, the annotation is as follows: "Later cases support the statement in the original annotation, that the rule that sureties are favorites of the law does not apply to surety companies for hire as it does to a voluntary or gratuitous surety."

The surety bond given by defendant in its very terms says that during the life of the bond the Commissioner of Revenue may take from the distributor "other or additional security." The plaintiff took from the distributor additional security by way of chattel mortgage. It was not prejudicial to the defendant for the delinquent distributor, W. A. Couch, to give to plaintiff additional security, but beneficial.

Williston on Contracts, sec. 1212-A, p. 3493, says: "While the law will allow the accommodation surety to escape liability by the assertion of certain defenses even though he has suffered no harm, in general, the corporate surety may not take advantage of such defenses unless he can show injury. Thus, an extension of time or a stay of execution granted by the creditor to the principal, usually a defense to the unpaid surety, will not discharge the compensated surety unless he has been prejudiced thereby." And in sec. 1222, p. 3515, he states that such companies are not entitled to the defense of the extension of time unless they can "show prejudice resulting therefrom."

Arant, the latest work on Suretyship, sec. 68, p. 299, says that the decisions, "Make it quite clear that the creditor's mere extension of time does not discharge a compensated surety; such sureties are required almost invariably to show injury as a condition to discharge." Principal and Surety, 50 Corpus Juris, sec. 252; Principal and Surety, 21 R. C. L., sec. 202. The leading case on this subject is *Guaranty Co. v. Pressed Brick Co.,* 191 U. S., 416, 24 S. Ct., 142, 48 L. Ed., 242, cited and followed in *Standard Electric Time Co. v. F. & D. Co.,* 191 N. C., at 659.

If plaintiff had no right under the terms of the bond to take the additional security and extend the time, it was waived and ratified by defendant. Defendant's agent gave the sensible reason for agreeing to the additional security—"Couch would pay the State the money quicker than he would pay defendant." In a letter of 20 March, 1937, from defendant to plaintiff, signed by its secretary and treasurer, "The surety sanctions the sale of service station property located at Creedmoor," etc., provided the proceeds are turned over to plaintiff. It even sets forth the minimum amount of sale.

In *Brimmer v. Brimmer,* 174 N. C., 435 (440), we find: "It is also well settled that although the agent had no authority, express or implied,

that the principle is responsible for his acts if he ratifies them; that taking benefit of the transaction with knowledge is a ratification (*Starnes v. R. R.,* 170 N. C., 224), and that when the agent acts outside of his powers, the principal must adopt the whole transaction or repudiate the whole. 'He cannot accept the beneficial part and reject what is left of it.' *Publishing Co. v. Barber,* 165 N. C., 482."

In *Bank v. Grove,* 202 N. C., 143 (147), is the following: "Where an agent who is not authorized to do so borrows money on behalf of his principal and applies it in satisfaction of the legal obligations of his principal and the latter knowingly retains the benefits of such payments, the transaction constitutes as between the principal and the lender the relation of debtor and creditor. Having received the benefits of the unauthorized act the principal will be deemed to have ratified the act and to have barred his repudiation of it to the injury of the other party. He cannot accept the benefits without bearing the burdens; he must duly repudiate the transaction or perform the contract in its integrity (entirety). *Lane v. Dudley,* 6 N. C., 119; *Miller v. Lumber Co.,* 66 N. C., 503; *Rudasill v. Falls,* 92 N. C., 222; *Christian v. Yarborough,* 124 N. C., 72; *Hall v. Giessell,* 179 N. C., 657." *Jones v. Bank,* 214 N. C., 794.

In Principal and Surety, 50 Corpus Juris, sec. 254, p. 155, the rule is laid down as follows: "Since the right to a discharge by extension of time is a personal privilege of the surety, he may waive such right or lose it through ratification or estoppel. . . . Waiver may be shown by acts subsequent to the extension, such as the surety's subsequent promise to pay the debts or his acknowledgment of its continued existence, by his giving the creditor written notice to sue, or by his acceptance of security from the principal after extension. An agreement by a surety for a further extension of time of payment after a previous extension to the principal is a waiver of the latter's defense. Acceptance of premium by a compensated surety after an extension of which it had knowledge is a waiver of the discharge."

We cannot sustain any of the contentions made by the defendant. The briefs of the litigants are able and well prepared. The defendant, under the facts and circumstances of this case, has not been discharged from its liability on its bond.

For the reasons given, the judgment of the court below is

Affirmed.