# Staunton

## AMERICAN SURETY COMPANY OF NEW YORK v. COMMONWEALTH OF VIRGINIA, ET AL.

September 9, 1942.

Record No. 2538.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*Denny, Valentine & Davenport* and *Wellford & Taylor,* for the appellant.

*Abram P. Staples, Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

This appeal involves the liability of the American Surety Company of New York for the defalcations of H. Stewart Jones, now deceased, who was for many years clerk of this court.

On September 15, 1903, Jones was appointed clerk for the unexpired term of his predecessor, George K. Taylor, deceased, and entered into a bond in the penalty of $10,000

with the American Surety Company of New York, as surety, conditioned upon the faithful performance of his duties. Thereafter he was appointed clerk for five successive terms of six years each, beginning in January, 1907, 1913, 1919, 1925 and 1931, respectively. At the commencement of each of the terms beginning in 1907, 1913 and 1919, respectively, Jones entered into a similar bond with the American Surety Company as surety. For the term beginning January, 1925, and for that beginning January, 1931, he failed to give the required bond. But for each of the years from January, 1925, through 1933, when Jones resigned his office, the American Surety Company rendered him a bill for an annual premium of $25 on his bond as "Clerk of the Supreme Court of Appeals of Virginia." Each of these premiums was paid by Jones out of funds under his control and belonging to the Commonwealth of Virginia. The amount of the premiums was precisely the same which the Surety Company had theretofore collected as surety on the clerk's bond, and is precisely the same which it would have collected had it executed, as surety, an official bond of the clerk for the terms beginning in 1925 and 1931, respectively.

A typical receipted bill for the premiums is as follows:

"Date    January 1, 1927

"To AMERICAN SURETY COMPANY OF NEW YORK, Dr.

"Client's Record of Payment

"Bank  ...................

"Check No. ..............

"Date  ...................

"Mr. H. Stewart Jones
"Richmond, Virginia
          "FOR PREMIUM ON BOND as follows:
"Premium is for continuing obligation specified for period stated, Company does not assume liability during any year or years, for any defaults, in aggregate, exceeding amount of its suretyship as determined by original obligation of suretyship, except as same may be specifically increased or

decreased in accordance with certificate executed as specified in such original obligation.

| "Bond No. | Name or Title | Date Due | Premium |
|---|---|---|---|
| "35822-A | H. Stewart Jones, Clerk Supreme Court of Appeals of Virginia | 1-22-27 | $25.00 |

        "PAID

           Jan. 11, 1927

        "AMERICAN SURETY COMPANY OF N. Y.

        "Per L. H. GATES

                "Thank you.

"Premium is for one year unless otherwise specified."

The record discloses that the words and figures "Bond No. 35822-A," appearing on each of the bills for the annual premiums, indicate the permanent serial number which the home office of the Surety Company assigned to the last bond which was actually executed by Jones and it, and dated January 22, 1919.

After the resignation of Jones as clerk of the court in May, 1933, it was found that he was short in his accounts in excess of $10,000 for each of the terms beginning in January, 1919, 1925 and 1931.

The Commonwealth made demand upon the Surety Company for $30,000, that being the total amount of the bonds required for the three terms during which the defalcations had occurred. Upon refusal of the Surety Company to pay, the Commonwealth filed a bill in equity against it and the committee of Jones, who had in the meantime been sentenced to the State penitentiary.* The gist of the Commonwealth's contention was that "a court of equity will consider and treat as done that which ought to have been done, and that, although the said defendant, American Surety Company, has not actually signed and executed in writing the two new or additional bonds, aforesaid, which should have been executed, and premiums for which were paid to

---

*Subsequently Jones died and his administrator was substituted as a party defendant.

said defendant company by your complainant, nevertheless, a court of equity will adjudge the rights and liabilities of the parties in this proceeding just as though the two said additional bonds had actually been executed in writing and delivered to complainant, and will grant and accord to the complainant that protection which it was entitled to receive in consideration for the payment of the said annual premiums made by the said complainant to the said defendant, American Surety Company, as aforesaid."

The Surety Company answered. It admitted liability for the clerk's defalcations for the term beginning January, 1919, and covered by the bond executed on January 22 of that year, and paid into court the sum of $11,475 in satisfaction thereof. While it admitted the facts stated in the Commonwealth's bill, it denied any liability for the clerk's defalcations for the two terms for which it had not actually executed formal bonds.

After hearing the evidence, as to which there was no dispute, the court entered a final decree sustaining the contention of the Commonwealth and holding the Surety Company liable for $20,000, with interest,—that is, the full amount for which it would have been liable had it actually executed formal bonds covering Jones' last two terms of office. From this decree the Surety Company has appealed.

Code, section 3384, provides: "The Supreme Court of Appeals shall take from each of its clerks a bond in the penalty of not less than three nor more than ten thousand dollars. If the clerk be appointed in vacation, under section thirty-three hundred and eighty-one, the bond may be taken in vacation by the judges making the appointment. Every such clerk shall, within ten days after the execution of his bond, or of any new or additional bond which may be required of him, deliver the same to the clerk of the circuit court of the county or corporation court of the city, wherein the place of session of the Supreme Court of Appeals for which the clerk giving the bond was appointed. * * * "

Code, section 279, provides: "Every bond required by law to be taken or approved by or given before any court, * * * , unless otherwise provided, shall be made payable to the Commonwealth of Virginia, with surety deemed sufficient by such court, * * * . Every such bond required of any person appointed to or undertaking any office, post, or trust, * * * , shall be with condition for the faithful discharge by him of the duties of his office, post, or trust, and when required to be taken or approved by or before * * * a court * * * shall be proved or acknowledged before the * * * court * * * and recorded * * * by the clerk * * * ."

The Surety Company contends that no recovery against it can be sustained here because no formal bond was "taken or approved," or was executed, in the manner required by these sections.

There is no merit in this contention. It is well settled that statutes providing for the approval of official bonds are for the protection of the public and not for the protection of the surety, and are directory and not mandatory. Hence, the failure of an officer or a court to approve an official bond, as required by statute, does not affect its validity. 4 Williston on Contracts, Rev. Ed., section 1217, p. 3504; 8 Am. Jur., Bonds, section 25, p. 717; 11 C. J. S., Bonds, section 25(b), p. 410; 21 R. C. L., Principal and Surety, section 26, p. 973.

In *Stinson* v. *Board of Sup'rs*, 153 Va. 362, 374-6, 149 S. E. 531, we held that a bond given for the faithful performance of official duties may be valid and binding upon the parties as a voluntary common-law obligation although not made with the formalities or executed in the mode provided by statute.

Since it is admitted that the statutory requirements were not complied with here, we must inquire whether there was a sufficient contract, either express or implied, upon which the Surety Company may be held liable.

Before pursuing this inquiry we should bear in mind that the appellant here does not occupy the status of

an accommodation or gratuitous surety toward which the rule of *strictissimi juris* applies. On the contrary, it is a surety for hire, and is regularly engaged in the business of undertaking surety contracts for profit. Such business is in the nature of insurance and such a surety's rights and liabilities are governed by principles applicable to insurance contracts as distinguished from those applicable to gratuitous sureties. See *National Surety Co.* v. *Commonwealth*, 125 Va. 223, 232-3, 99 S. E. 657; *Maxwell* v. *Southern Fidelity Mut. Ins. Co.*, 217 N. C. 762, 9 S. E. (2d) 428, 431; 5 Couch Cyclopedia of Insurance Law, section 1199a, pp. 4324-5.

In 25 Corpus Juris, Fidelity Insurance, p. 1089, it is said: ■ "(Section 1) Fidelity insurance, as the term is usually employed, is a contract whereby one, for a consideration, agrees to indemnify another against loss arising from the want of honesty, integrity, or fidelity of employees or others holding positions of trust."

"(Section 2) The contract is sometimes in a form very similar to that of a policy of insurance, while frequently it is in the form of a bond of indemnity. It is sometimes issued upon the application of the employer and sometimes upon the application of the employee. But whatever the form of the contract, it is well established that guaranteeing the fidelity of employees and persons holding positions of trust is a form of insurance, and that such a contract is subject to the rules applicable to insurance contracts generally, and not to the rules applied to ordinary sureties for accommodation. * * * "

■ While the parties here entered into no express contract whereby the Surety Company guaranteed the fidelity of Jones, for the terms in question, in our opinion there was an implied contract to this effect, the obligation of which a court of equity will enforce.

At the commencement of each of the terms in question, the Surety Company, in effect, offered to insure Jones' fidelity in the same manner in which it had previously done by rendering to the Commonwealth a bill for the annual pre-

mium, which was identical in amount with that which would have been charged if the bonds had actually been executed. This offer the Commonwealth accepted by promptly paying the premiums. The Surety Company continued to collect the premiums throughout the full term of six years beginning in January, 1925. It collected the premiums during the three years of the succeeding term and until Jones' resignation. Over this nine-year period it collected the identical premiums which it would have collected had formal bonds been executed for the two terms.

█ The essential terms of a contract of insurance are, "(1) the subject matter to be insured; (2) the risk insured against; (3) the commencement and period of the risk undertaken by the insurer; (4) the amount of insurance; and (5) the premium and time at which it is to be paid." 29 Am. Jur., Insurance, section 132, p. 149.

Unquestionably the minds of the parties met on these essentials in the present case.

█ It is true that they thought that this insurance coverage could be effected by a renewal of the last bond actually signed by Jones and the Surety Company, dated January 22, 1919. But as to this they were in error, for it is well settled that the duration of a bond to secure the faithful performance of the duties of an officer is co-extensive with the term of office and cannot be extended. *Aetna Cas., etc., Co.* v. *Board of Sup'rs*, 160 Va. 11, 62, 168 S. E. 617; 22 R. C. L., Public Officers, section 199, p. 513; 11 C. J. S., Bonds, section 55(d), p. 431.

█ But where the minds of the parties have met as to the essentials of the contract, a mistake as to the form of the obligation does not render the contract null and void. A court of equity, which regards the substance rather than the form, will impose upon the parties liabilities just as if their intent had been expressed in a legal and proper manner. This is but an application of the maxim that "Equity regards as done, that which ought to be done."

[█ "As a general rule, a renewal of insurance by the payment of a new premium and the issuance of a receipt

therefor, where there is no provision in the policy for its renewal, is a new contract on the same terms as the old; * * * ." 29 Am. Jur., Insurance, section 258, p. 247. Such is the situation here.

Since the Surety Company has voluntarily assumed the risk and accepted the consideration therefor, it should not be permitted to escape the suretyship obligation. Clearly, we think, it is liable on its implied contract with the Commonwealth in the same manner and to the same extent as if it had executed the formal bonds for the two terms.

To uphold the contrary contention of the Surety Company would be to sacrifice substance to form. Moreover, it would, in effect, sanction a fraud on the Commonwealth. For nine years the Surety Company accepted the premiums from the Commonwealth for the express purpose of insuring the fidelity of this official. Equity will not allow it now to say that the Commonwealth should receive nothing in return for what it paid.

Oral contracts of insurance have frequently been enforced. In *Wooddy* v. *Old Dominion Ins. Co.*, 31 Gratt. (72 Va.) 362, 31 Am. Rep. 732, this court held that where a contract for the insurance of a building had been made with the agent of an insurance company having authority to issue policies, and the premium had been paid, but before the policy was issued the building was consumed by fire, a court of equity had jurisdiction to enforce the payment of the policy at the suit of the assured against the insurance company. See also, *Interstate Fire Ins. Co.* v. *McFall*, 114 Va. 207, 210, 76 S. E. 293; 8 Couch Cyclopedia of Insurance Law, section 1971, pp. 6520, 6521; 29 Am. Jur., Insurance, section 127, p. 144. The same principle applies here.

Finally, it is argued that the contract sought to be enforced here is "a promise to answer for the debt, default, or misdoing of another," and is unenforceable under the statute of frauds (Code, section 5561) because not in writing.

Whether a contract of fidelity insurance is within this provision of the statute of frauds is a question on which the

authorities are divided. Some take the view that the promise of the surety or insurer is a primary obligation and is not within the statute. 25 C. J., Fidelity Insurance, section 2, p. 1091; 50 C. J., Principal and Surety, section 124, pp. 70-1; *Quinn-Shepherdson Co. v. United States Fidelity, etc., Co.*, 142 Minn. 428, 172 N. W. 693. Others take the view that the promise of the surety or insurer is a collateral undertaking and is within the statute. 21 R. C. L., Principal and Surety, section 17, pp. 962-3; *Commonwealth v. Hinson*, 143 Ky. 428, 136 S. W. 912, L. R. A. 1917B, 139, Ann. Cas. 1912D 291.

It is not necessary that we decide here which of these views should be adopted. For even if it be assumed that this contract is within the statute, the receipted bills for the paid premiums, signed by the authorized agent of the Surety Company, are sufficient memoranda in writing to satisfy the requirements of the statute. 2 Williston on Contracts, Rev. Ed., section 568, p. 1620; 27 C. J., section 307, p. 258. See also, *Massachusetts Bonding, etc., Co. v. Board of County Commissioners*, 100 Colo. 398, 68 P. (2d) 555, 556, for a situation quite similar to that here.

In our opinion there is no error in the decree appealed from and it is

*Affirmed.*