## Richmond

NATIONAL SURETY COMPANY v. J. B. HICKLIN, ET ALS.

November 13, 1930.

Present, Prentis, C. J., and Campbell, Hudgins, Gregory and Browning, JJ.

578

*J. S. Hansel, Timberlake & Nelson* and *Robert H. Talley,* for the appellant.

*Curry & Carter* and *Edwin B. Jones,* for the appellee.

HUDGINS, J., delivered the opinion of the court.

This case was argued before this court, with only three justices sitting, at the September term, 1929, in Staunton, and opinion announced by the late Justice R. H. L. Chichester (150 S. E. 398); a petition for rehearing was granted and the case again argued on the petition and briefs.

■ ■ It is deemed advisable to restate the facts, as follows: By a decree of the Circuit Court of Highland county, entered April 24, 1919, in a partition suit under the style of *Ethel Armstrong* v. *Sarah S. Hicklin, et als*, Andrew L. Jones and another were appointed special commissioners to sell two tracts of land. Andrew L. Jones, only, gave the required bond in the penalty of $7,000, with I. L. Beverage and Don Sullenberger as sureties. At the commissioner's sale J. B. and Orlin C. Hicklin, two of the interested parties, became the purchasers of both tracts, agreeing to pay $1,300 for the smaller tract, sold free of the widow's dower, and $6,180 for the larger tract, sold subject to the widow's dower. The costs of the suit and expenses of the sale were paid by the purchasers, who executed three bonds for $2,425.80, each, due one, two and three years from date. By decree entered on July 8, 1919, the sale was confirmed and in the same decree Andrew L. Jones, then bonded as special commissioner, was directed to collect the three bonds as they became due, or sooner if the purchasers so elected, and disburse the proceeds to the proper parties, except the widow's dower in the $1,300, amounting to $433.33, which sum was ordered to be paid to a special receiver "to hold and keep the same invested for the benefit of Sarah S. Hicklin (the widow) as long as she lives and pay the yearly interest to her." Andrew L. Jones was named as the special receiver, but was not authorized to receive this fund until he gave bond as receiver in the penalty of $600, conditioned for the faithful performance of his duties.

Nothing further seems to have been done in the cause until April 11, 1924, when there was filed a report of the transactions of Andrew L. Jones, special commissioner, made by John M. Colaw, commissioner of accounts. This report charges Andrew L. Jones, as commissioner, with the sum of $433.33⅓, principal representing the dower fund, with interest thereon from July, 1919, to July, 1923, totaling $113.36. This report was confirmed by a decree entered on the 23rd day of April, 1924, and Andrew L. Jones, the commissioner, was ordered to pay to the proper parties the balance due by him, as ascertained in this report.

The next decree in the cause was dated October 16, 1924, and so much thereof as deals with the question now under consideration is as follows:

"This cause came on this day to (be) further heard on the papers formerly read, on the report of master commissioner John M. Colaw and filed in this cause on April 11, 1924, with an exception thereto taken by Lola K. Hicklin, Admr. of Ruby Hicklin, deceased, upon the rule issued against A. L. Jones, as principal, and Don Sullenberger and I. L. Beverage, his sureties, and docketed at the July term, 1924, and was argued by counsel;  *  *  *

"No decree is made at this time with respect to the matters shown in account B of the said report showing the amounts due and payable to Sarah S. Hicklin from the said Andrew L. Jones as special receiver, but he shall pay the interest accrued at once, and the remaining instalments as they become due, to the said Sarah S. Hicklin. The court reserves its opinion and the decision that should be made as to the liability of the sureties in this matter." Account B charges this fund to Andrew L. Jones as commissioner and not as special receiver.

In the same decree, on two separate items, a judgment totaling $584.30 was entered against Andrew L. Jones and

the sureties on his commissioner's bond. On the same date a subsequent decree was entered permitting Andrew L. Jones to give a new bond as commissioner in the penalty of $7,000, with the National Surety Company as surety, discharging his former sureties from any future liability on the bond given by them, but expressly preserving all liabilities on the commissioner's bond incurred prior to the execution of the new bond.

It appears that Andrew L. Jones had a short time previous to this decree been appointed attorney in fact for the National Surety Company, with power to execute such bonds for and in the name of the company.

Andrew L. Jones had not executed a bond as special receiver, as ordered by the decree of July 8, 1919, but on this date, October 16, 1924, he executed a bond in the penalty of $600, with the National Surety Company as surety, and containing the following conditions and stipulations.

"The condition of the above obligation is such that whereas at the July term of the Circuit Court of Highland county, 1919, the undersigned Andrew L. Jones was required by a decree entered in the chancery cause of *Ethel Armstrong* v. *Sarah S. Hicklin*, etc., to execute a bond in the penalty of $600 conditioned for the faithful performance of his duties as special receiver of said court before receiving into his hands as said receiver a certain fund derived from the sale of certain tract of land in the bill in said cause described lying on Bull Pasture river in Highland county; and said fund having come into the hands of said Andrew L. Jones and he *inadvertently* failed to execute this bond and this bond is accordingly executed to secure the fund in his hands, as receiver, due the said Sarah S. Hicklin.

"ANDREW L. JONES (Seal)
"NATIONAL SURETY Co. OF N. Y.
"Per ANDREW L. JONES, Att'y in Fact (Seal)"

Andrew L. Jones was a practicing member of the Monterey Bar and was the attorney representing the plaintiff in the original bill filed in this case; he had embezzled court funds, and in August, 1926, was disbarred, tried, and sentenced to the penitentiary; he made no report to the National Surety Company of the bond he executed as special receiver, never paid any premiums thereon, and the first intimation the company had that such a bond had been executed was when, on March 31, 1926, a rule was issued to show cause why judgment should not be rendered against it on the commissioner's bond and the special receiver's bond described above. In answer to this rule, the National Surety Company appeared, filed its answer, depositions were taken, and a decree entered holding the National Surety Company liable on the special receiver's bond for the principal sum and interest. It is this action of the court we are asked to review.

The decree of July 8, 1919, authorized Andrew L. Jones to act in two capacities; (1) As a special commissioner to collect the proceeds from the sale of the lands and disburse them to the proper parties. For any failure in the performance of these duties the sureties on the commissioner's bond were liable. (2) As special receiver, he was to take and safely invest the fund representing the widow's dower and pay her the interest annually. He did not become the special receiver until he had complied with the conditions of the decree by giving the required bond. If he paid himself the money without giving the bond it was the same thing as paying it to another party not authorized to receive the fund. In such an event there is no question but that the sureties on the commissioner's bond would be liable for such action.

The appellees concede that such is the general rule, but contend that because of the recitals in the bond—namely, that the fund had come into the hands of Andrew L. Jones

and he had inadvertently failed to give the required bond—that therefore the liability on the bond includes any failure in duty on the part of the receiver from July 8, 1919, and that the language used should be interpreted to mean that Andrew L. Jones received the fund as special receiver.

The appellant contends that Andrew L. Jones never acted as special receiver, that the recitals of the bond are true, that Andrew L. Jones did receive the fund, but received it, not as special receiver, but as special sales commissioner, that as such he embezzled it, and that in order for the court to construe the recitals in the bond to mean that Andrew L. Jones received this money as special receiver the words "special receiver" would have to be read by the court into the bond after the word "Jones" and before the words "and he inadvertently," etc.

No attempt is made by either of the parties to deny that the total purchase price of the lands, less the interest of the parties therein, was paid to Andrew L. Jones. Of course, the $433.33⅓, representing the widow's dower, was included in the payment to Andrew L. Jones. If he had not been named as special receiver in the decree his duty as special commissioner authorized him to receive this fund, which he did. Once having the fund under his control as commissioner, it became his duty to segregate this fund while still acting as commissioner, and pay the same to the parties authorized to receive it. Then the first act as special commissioner (assuming, which is not a fact, that he had complied with the conditions of the decree by executing the receiver's bond) was to receive this specific sum, namely, $433⅓ and no more, from the sale commissioner. Until there was some act on the part of Andrew L. Jones as special receiver, and a breach of his duty as special receiver, there was no liability on the receiver's bond.

The burden of proving that Andrew L. Jones acted as special receiver and a breach of his duty while

acting in this capacity is on the parties complaining. The proof upon which the complaining parties here rely is (1) the decree of July 8, 1919, appointing Andrew L. Jones special receiver; (2) the recitals in the receiver's bond quoted above. These recitals are binding upon the appellant, and it does not lie in its power to contradict them. This being true, it is important to analyze the recitals. They show, (1) that Andrew L. Jones was appointed receiver by the Circuit Court of Highland county in this suit; (2) that he was required to give bond as special receiver in the sum of $600.00; (3) that he failed to execute such bond prior to October 16, 1924; (4) that the fund has come into the hands of Andrew L. Jones. The controversy is as to the last analysis, namely, in what capacity was the fund paid to Andrew L. Jones.

The report of John M. Colaw, commissioner of accounts and master commissioner, shows that he charged the sale commissioner, Andrew L. Jones, with the entire purchase price of the lands, with interest thereon. In the separate accounts which he made for the six heirs Andrew L. Jones is given credit as of July 5, 1920, the date the first bond became due, for paying each of these heirs, or their representatives, $403.03, totaling $2,418. and certain credits for other payments made shortly thereafter, from which it is fairly inferred that the proceeds of the first deferred payment were distributed among the parties entitled to receive the same, and hence there was no segregation of the dower fund, or any part thereof, from this payment.

On August 30, 1921, the purchasers elected to pay the balance of the purchase money, which they did by (1) receiving credit for their interest in the proceeds of the sale; (2) by delivering to Andrew L. Jones checks totaling $3,567.86; and (3) by giving to him in cash $200.00. Andrew L. Jones deposited the checks in the First National Bank of Highland to his personal account and appropriated

the same to his own use by giving personal checks therefor, all of which were paid by the bank prior to September 16, 1921. What disposition was made of the $200.00 in cash does not appear.

This evidence conclusively shows that $3,767.86 of the purchase money, including the widow's dower, was diverted from its proper channel as early as September 16, 1921, by Andrew L. Jones, acting as special commissioner, and that from that day was lost all trace of the proceeds of sale, including the dower fund, which was not segregated therefrom, or ear-marked in any manner.

The record discloses nothing that Andrew L. Jones, as special receiver, did, or attempted to do, from July, 1919, to October 16, 1924, on which date he gave the special receiver's bond now in question. The appellees claim that he retained the dower fund, and even if their further contention be true, namely, that liability on the receiver's bond dates back to July, 1919, Andrew L. Jones could not receive the fund in his capacity as receiver until Andrew L. Jones, as commissioner, had segregated the dower fund from the proceeds of sale. This he never did, either before or after the receiver's bond was executed.

Even if it be conceded that at the time that Andrew L. Jones executed the receiver's bond it was his purpose and intention to relieve the sureties on his commissioner's bond and bind the National Surety Company on his receiver's bond, the question is then presented whether or not a principal acting in a dual fiduciary capacity can by his own acts, when the trust property is not in his possession, relieve one set of sureties at the expense of another.

As heretofore stated, Andrew L. Jones had embezzled the fund for which complaint is here made, and this fact was known to his sureties on his commissioner's bond, and a rule had been issued against Andrew L. Jones and his sureties on his commissioner's bond to show why a personal

judgment should not be entered against them for this very dower fund. While this rule is not in the record as presented to us, a decree of court states that such a rule had been issued and docketed at the July term, 1924; a hearing was held on this rule and judgment entered against the sureties for a part of the purchase price of the lands, and in order to escape judgment for this particular fund Andrew L. Jones executed the bond here in question, and it is inferred that as a result of this action the court did not enter judgment on the rule, but expressly reserved its decision and never acted thereon. The effect of this move of Andrew L. Jones, if successful, is to relieve the sureties on his commissioner's bond for the amount here demanded and endeavor to place the responsibility on a third and different party.

The decision on this phase of the case is controlled, not by the authorities cited by the appellees, but by the decision of this court in the case of *Smith* v. *Gregory*, 26 Gratt. (67 Va.) 248, where it is said that "while the executor may elect to hold in one character or the other property in his actual possession or under his control, he cannot thus transfer a mere liability from one set of sureties to another; that all the cases upon the subject proceed upon the idea that the executor has funds actually in hand, and that he is not a mere debtor for converted assets; and when he has been guilty of a *devastavit* in wasting or appropriating the estate a right of action at once accrues upon the bond, his liability and that of his sureties becomes fixed, and can only be discharged by actual payment, or what is equivalent to it; and when the executor is also guardian, although he cannot make a payment to himself, it is incumbent upon him to do what he would do if the payment was to be made to a third person, he ought to keep the trust fund separate and distinct from his own estate, and easily identified as the property of the ward.

"These views, it seems to me, are so sensible, so manifestly in accordance with the dictates of common justice, they ought to prevail."

The case at bar is stronger even than the case above, for in the instant case, as pointed out, the right of action had not only accrued upon the bond of the commissioner, but action had begun and matured, and judgment held in abeyance. The reason for the conclusion of the court in this case is given by Judge Staples in the above case, as follows: "The rule which allows an executor guilty of a *devastavit*, at his pleasure, to shift his liabilities from one set of sureties to another, is calculated to produce much inconvenience and injustice. Its effect is to hold out a premium for fraud and collusion by giving the power to the executor to favor one set of sureties at the expense of the other, without fear of detection and exposure.

"It enables him, at his pleasure, to transfer a liability from the party who ought primarily to bear it to innocent parties who ought not to be the sufferers.

"It enables him, if so inclined, to defeat the just claims of the distributee by shifting the responsibility from capable and solvent sureties to those that are doubtful and insolvent.

"It clothes a defaulting fiduciary, who has wasted a trust fund, with an unlimited discretion, which ought to be accorded only to one who has faithfully performed his duty. And finally, it takes from the sureties a strong motive to see to it that the personal representative faithfully discharges all the trusts and obligations of his office."

For the reasons stated, the decree of the lower court is reversed, the rule against the appellant, the National Surety Company, is dismissed, and the cause remanded for further proceedings not in conflict with the views herein expressed.

*Reversed.*