Robert G. NOLAN, as Administrator of the Estate of Jasper Wallace Hall, Deceased, Marjory M. Hall, individually, and Marjory M. Hall as guardian ad litem of Judith Marie Hall, an infant, Plaintiffs-Appellants,

v.

TRANSOCEAN AIR LINES, Defendant-Appellee.

No. 366, Docket 25779.

United States Court of Appeals Second Circuit.

Submitted May 11, 1961.

Decided May 29, 1961.

Speiser, Quinn & O'Brien, New York City (Stuart M. Speiser and Robert A. Dwyer, New York City, of counsel), for appellants.

Haight, Gardner, Poor & Havens, New York City (William J. Junkerman, James B. McQuillan, and Paul A. Renne, New York City, of counsel), for appellee.

Before LUMBARD, Chief Judge, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

When this case was previously before us, 2 Cir., 1960, 276 F.2d 280, 281, we stated our principal task as being "to determine what the New York courts would think the California courts would think on an issue about which neither has thought." Prophecy remains the problem; but the area of perplexity has shifted from the void we then considered as presenting the principal question to ground we believed to be firmly occupied by apposite decisions of lower California courts, now called into question by the dictum of a higher one.

We recognized in our prior opinion, 276 F.2d at pages 285–286, that if the minor daughter's cause of action "stood alone, neither the California nor the New York statute of limitations would be an obstacle, since both were tolled by infancy." We thought, however, that did not warrant reversal of the District Court's dismissal of this action as time-barred because of a California rule "that § 377 of its Code of Civil Procedure creates a single joint cause of action for wrongful death and that if limitation has barred the action as to an adult parent, the action is also barred as to a minor infant. Sears v. Majors, 1930, 104 Cal.App. 60, 285 P. 321; Haro v. Southern Pacific R. Co., 1936, 17 Cal.App.2d 594, 62 P.2d 441"—to which other citations of intermediate courts of appeal could have been added.

Shortly before the argument in this Court the Supreme Court of California decided Leeper v. Beltrami, 1959, 53 Cal. 2d 195, 1 Cal.Rptr. 12, 347 P.2d 12, 22, which was not called to our attention. This was understandable, for reasons that will hereafter appear. Leeper v. Beltrami was an action by Thomas Leeper and his wife, Abbie, for recovery of moneys paid under duress, starting in 1952. The husband was then serving a prison term from which he was released in 1954. The action was filed in 1956; a three-year statute of limitations for actions for relief on the ground of fraud, Code Civ.Proc. § 338, subd. 4, was held to be applicable. The Supreme Court of California decided that, because of his disability, the husband's claim was not time-barred. Dealing with the wife's claim, it said "If the cause of action were a joint one, the statute would be tolled as to both," citing 2 Wood on Limitations (4th ed. 1916) 1079, which had also been cited in Sears v. Majors for the contrary view; but then went on to hold the claim was not joint and the wife was time-barred. If the dictum is to be taken literally, its apparent result in wrongful death actions is the exact opposite of Sears v. Majors—the tolling of the statute as to the child's cause of action for wrongful death would save not only her own but the widow's and the administrator's as well.

The Supreme Court has directed us, 1961, 365 U.S. 293, 295–296, 81 S.Ct. 555, 557, 5 L.Ed.2d 571, to "decide what relative weights, as authoritative sources for ascertaining California law, the New York Court of Appeals would accord to the Sears-Haro line (direct holdings of District Courts of Appeal between 1930 and 1938) and to Leeper (a considered, relevant dictum of general scope by the California Supreme Court in 1959)." We find the question still more difficult than that decided on the former appeal, even with the help given by counsel's further briefs. Sears v. Majors and the other decisions of intermediate California appellate courts that followed it were not referred to by the California Supreme Court in Leeper v. Beltrami. Neither did the Supreme Court of California refer in the Leeper opinion to its own decision in Robertson v. Burrell, 1895, 110 Cal. 568, 42 P. 1086, on which the lower court had relied in deciding Sears v. Majors. For these and other reasons, we fear the only candid answer to the question the Supreme Court has put us is that we just don't know; we should have been happier if the Court's mandate had allowed of some procedure to permit this recently created conflict between California dictum and California decisions to be settled by the only court that can authoritatively determine it, rather than requiring us to continue two-

dimensional surmise. See 1 Moore, Federal Practice (1960 ed.), pp. 2119–2121, 3332; Vestal, The Certified Question of Law, 36 Iowa L.Rev. 629 (1951).

We shall take as our frame of reference the first alternative stated by Judge Frank in Cooper v. American Airlines, Inc., 2 Cir., 1945, 149 F.2d 355, 359, 162 A.L.R. 318: "What would be the decision of reasonable intelligent lawyers, sitting as judges of the highest New York court, and fully conversant with New York 'jurisprudence'?" The latter would not much aid the judges of the New York Court of Appeals in making a determination of California law. We know of no unique New York "jurisprudence" as to the effect to be given to dicta. In re Weeks' Will, 1945, 294 N.Y. 516, 522, 63 N.E.2d 85, 87, rehearing denied 1945, 294 N.Y. 979, 63 N.E.2d 712, followed dicta of the highest court of Florida which "were carefully considered and deliberately made, and, in the absence of any authority from that State to the contrary." Perhaps, in a close case like this one, the Court of Appeals would be influenced by the statement of one of its greatest members: "I own that it is a good deal of a mystery to me how judges, of all persons in the world, should put their faith in dicta," Cardozo, The Nature of the Judicial Process, p. 29; certainly we would be. Presumably in its task of predicting California decision, the New York Court of Appeals would be even more interested in California's views about dicta than in its own. It would learn that although "an opinion is not to be disregarded wholly because it is obiter dictum," In re Wever's Estate, 1936, 12 Cal.App.2d 237, 55 P.2d 279, 280, hearing denied by Supreme Court (1936); Donnell v. Linforth, 1935, 11 Cal.App.2d 25, 52 P.2d 937, 939, hearing denied by Supreme Court (1936), the Supreme Court of California has stated that since language in a cited decision was unnecessary to the decision, it "may not therefore now be relied upon as authority in the present proceeding," San Diego County v. Hammond, 1936, 6 Cal. 2d 709, 59 P.2d 478, 486, 105 A.L.R. 1155.

Moreover, one district court of appeal, dealing with dicta of intermediate appellate courts, has declared "Expressions of the given character ought not to be permitted to overcome the long line of authority expressing * * * a contrary view" in the same courts, unless a new and "highly persuasive reason" impels it, Peis v. Mohr, 1932, 126 Cal.App. 300, 14 P.2d 878, 879. The Court of Appeals might also give weight to the words of a distinguished member of California's highest court, that it is when appellate judges "analyze issues that have been disputed every inch of the way" that "they learn to guard against premature judgment." Traynor, Some Open Questions on the Work of State Appellate Courts, 24 U. of Chi.L.Rev. 211, 224 (1957).

Appellants say we must take it to have been decided by the Supreme Court that the Leeper dictum was "considered, relevant * * * [and] of general scope." Generally stated the dictum plainly was, our labors over it ought attest our regard for its relevancy, and we assume it was considered as anything said by an appellate court of standing is. But we cannot agree the Supreme Court meant to exclude us from the same study of the degree of consideration and of relevancy which we believe the New York Court of Appeals would give; if the Supreme Court had so intended, it would have reversed rather than remanded, cf. Romero v. Garcia & Diaz, Inc., 2 Cir., 1961, 286 F.2d 347, 350, certiorari denied, 1961, 365 U.S. 869, 81 S.Ct. 905, 5 L.Ed.2d 860.

We have already indicated the general nature of the action in Leeper v. Beltrami. In the District Court of Appeal the principal argument on limitations was whether the action was governed by the three year statute provided by California Code Civ.Proc. § 338, subd. 4 for actions for fraud, or by the five year period established by § 318 for the recovery of possession of real property. The District Court of Appeal held the latter, 1959, 335 P.2d 968, 971. Not only were Sears v. Majors and its progeny not cited—the entire question of the effect of disability of one joint

plaintiff on the application of the statute was not more than hinted at in the briefs if, indeed, it was that. No further contribution to the subject was made by Respondents' Petition for a Hearing in the Supreme Court or by Appellants' Reply.

Appellees urge also that there is an important distinction between the Leeper situation and an action for wrongful death. This is that in the Leeper case the wife could not have instituted a joint action while her husband was incarcerated, since Calif.Penal Code, § 2600 deprived him of all civil rights and California has not provided for the appointment of a guardian *ad litem* for a prisoner, whereas here the statute, Calif.Code Civ.Proc. § 377, permits the personal representative *or* any heir to maintain the action, hence an administrator or, after November, 1954, four years before the bringing of this action, Hall's widow could have begun one and joined the infant, Calif.Code Civ.Proc. §§ 382, 389, Salmon v. Rathjens, 1907, 152 Cal. 290, 92 P. 733, for whom a guardian would have been appointed, Loock v. Pioneer Title Ins. & Trust Co., 1935, 4 Cal.App.2d 245, 40 P.2d 526. The authorities cited for the statement in Wood on Limitations, which on its face supports the Leeper dictum rather than the Sears decision, are said to be inapplicable to California wrongful death actions on that account. Cf. Moore v. Capps, 1847, 9 Ill. 315.

To all this must be added the policy embodied in the California legislature's selecting so short a period of limitations as one year for actions for personal injuries or wrongful death, Code Civ.Proc. § 340, subd. 3, a period also prescribed for such typically short-lived torts as libel, slander, assault, battery and false imprisonment, as well as seduction of a person below the age of legal consent.

The legislature must have known that instances in which a "wrongful act or neglect" might cause the death of the parent of a young child were not uncommon; it is hard to see why it should have wished to allow the period of limitations in such cases to be prolonged up to a score of years, when there was in existence a person able to sue for the benefit of all and the award is a unitary sum in which "The respective rights of the heirs * * * shall be determined by the court." Code Civ.Proc. § 377. True, exactly such a prolongation of the period would occur when an infant is injured, even though the infant had a parent who might have been appointed as guardian *ad litem*, Scott v. McPhecters, 1939, 33 Cal.App.2d 629, 92 P.2d 678, hearing denied, 1939, 93 P.2d 562; but there the claim is solely the infant's and the statute is too clear to raise any question for construction. It has been suggested that "Where there are multiple claimants and one or more but not all are subject to some incapacity, the results should depend on the nature of the cause of action," Developments-Statutes of Limitations, 63 Harv.L.Rev. 1177, 1230 (1950). Here, any one of the joint claimants could sue and have those under a disability named as defendants, with their rights in the single award to be determined by the court, and there would rarely be a case where the personal representative or adult heirs would have an interest adverse to the infants that would cause him or them to refrain from suit. Where the case for starting the running of the statute is so strong and the consequences of an opposite rule so contrary to apparent legislative policy, we cannot believe the Supreme Court of California meant to overturn, without citation, an unbroken line of decisions of intermediate appellate courts, of thirty years' standing, consistent with that policy.[1]

---

1. In both Sears and Haro, hearing was denied by the Supreme Court of California. That court "ordinarily grants a petition if a majority concludes that justice demands it," even if the question of law is not novel or important, Traynor, Some Open Questions on the Work of State Appellate Courts, 24 U. of Chi.L.Rev. 211, 214 (1957)—*a fortiori*, we should suppose, when it is. We are told also that "The Supreme Court is willing to have the district courts make a good deal of new law, so long as it is in accord with the former's idea of what the law should

Since we cannot believe this, we equally cannot believe the New York Court of Appeals could believe it.

We therefore adhere to our affirmance of the order of the District Court granting defendant's motion for summary judgment.

---

be," and that a survey shows hearing is granted primarily in cases where the Supreme Court modifies either the result or the reasoning below. To Hear or Not to Hear: A Question for the California Supreme Court, 3 Stanford L.Rev. 243, 247 (1951). The California Supreme Court itself has said that "The order of this court denying a petition for a transfer * * * after * * * decision of the District Court of Appeal may be taken as an approval of the conclusion there reached, but not necessarily of all of the reasoning contained in that opinion." Eisenberg v. Superior Court, 1924, 193 Cal. 575, 578, 226 P. 617, 618; see also Cole v. Rush, 1955, 45 Cal.2d 345, 350, 289 P.2d 450, 453, 54 A.L.R.2d 1137.