**CONESCO INDUSTRIES, LTD. a New Jersey Corporation, Appellant,**

v.

**CONFORTI AND EISELE, INC., D. C. a District of Columbia Corporation, et al.**

No. 78–1588.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 7, 1979.

Decided March 20, 1980.

Rehearing Denied April 17, 1980.

William A. Dobrovir, Washington, D. C., was on brief, for plaintiff-appellant.

Phillip H. Harris, Washington, D. C., was on brief, for appellee Maryland Casualty Company.

Robert F. Condon, Washington, D. C., also entered an appearance for appellee.

Before MacKINNON and WILKEY, Circuit Judges, and GORDON, United States Senior District Judge for the Western District of Kentucky.

Opinion for the Court filed by Senior District Judge JAMES F. GORDON.

Dissenting Opinion filed by Circuit Judge WILKEY.

JAMES F. GORDON, District Judge:[1]

This case involves an action brought by the appellant, Conesco Industries, Ltd., (hereinafter Conesco) for compensation for the use of concrete forming materials used in the construction of the Gallerie Mall shopping center. The appellee, Conforti & Eisele, Inc., D.C., (hereinafter C & E) was the general contractor of this project, and appellee Maryland Casualty Company (hereinafter Maryland) was the bonding company that executed the surety bond for the construction project. At the district court level, C & E was dismissed as a party as a result of Conesco's inability to prove the existence of either an express or implied contract between them and C & E. The district court also held that Conesco's cause of action on the surety bond against Maryland failed as the result of Conesco's supposed failure to comply with the notice provisions found in the surety bond. See *Conesco Industries, Ltd. v. Conforti & Eisele, Inc., D. C., et al.,* Civil Action No. 77-0977 (D.D.C., filed on April 24, 1978). At issue is whether Conesco was barred from recovery for failure to comply with the notice provisions. For the following reasons, this Court reverses the decision of the district court.

I.

In September of 1973, C & E entered into a general contract with HSL–DC Corporation, whereby the former agreed to be the general contractor for the construction of the Gallerie Mall. Subsequently, C & E executed a payment bond with Maryland in October of that same year (J.A. 12–16). In September of 1974, C & E entered into a subcontract with the Vespe Contracting Company (hereinafter Vespe), a concrete construction company, whereby Vespe agreed to perform all the concrete construction and supply all the material needed for this construction. Vespe then entered into a sales and lease agreement with Conesco who agreed to supply both equipment and supplies to Vespe.

Beginning in 1975, Conesco began having difficulties in receiving payment from Vespe. To insure payment, C & E would issue checks jointly to Vespe and Conesco which Vespe would endorse and turn over to Conesco. In October of 1975, Conesco demanded payment from Vespe for $33,477.34; a copy of this demand being sent to C & E. On or about November 5, 1975, Conesco wrote directly to C & E stating that Vespe owed Conesco $33,662.14. By November 25, 1975, the amount owed had grown to $38,872.44, and Conesco notified both Vespe and C & E of its demand for payment. On December 1, 1975, Conesco received a joint check for $7,998.

Vespe's relations with C & E were also strained, and after C & E had sent to Vespe a check made payable solely to Vespe for the amount of $70,000, the subcontractor walked off the job in December of 1975, leaving C & E to complete the concrete work on the project. No part of the $70,000 was ever paid over to Conesco.

When Vespe abandoned the project, it left some of Conesco's concrete forms at the site. Conesco alleges that it attempted to have the forms returned to it but that C & E used these forms until July of 1976. Conesco did not attempt to find out if the project was bonded until June of 1976,

1. James F. Gordon, Senior United States District Judge, Western District of Kentucky, sitting by designation pursuant to 28 U.S.C.A. § 294(d) (1968).

when it began making inquiries to both Vespe and HSL–DC. Counsel for Vespe informed Conesco that he did not believe that the Gallerie project was bonded, but that he could not verify this, and the owner of the project could not apparently answer this question but did surmise that it was bonded through a different bonding company (Plaintiff's Exhibit 26). The president of Vespe answered inquiries concerning the bond by stating that while he believed the project was bonded, he did not know who the bonding company was (Plaintiff's Exhibit 34e). It was not until July that Conesco was able to find out that Maryland was the surety on the payment bond. Notice of the claim was sent to Maryland in a letter dated July 30, 1976 (Plaintiff's Exhibits 28, 34).

As stated previously, the district court dismissed the subsequent action brought by Conesco against Maryland for the apparent failure of Conesco to comply with the notice provision found in the payment bond. The court gave as its reasoning the following:

Thus recovery hinges upon whether adequate notice was given to satisfy the requirements of the bond. The bond provided, to the extent here applicable, that a claimant such as plaintiff must give notice to the general contractor and the bonding company "within ninety (90) days after such claimant . . . furnished the last of the materials for which the claim is made." Vespe walked off the job the first week of December, 1975, and plaintiff had terminated business relations with it before that date. It is agreed that the general contractor had timely notice of plaintiff's claim. No notice, however, was given the bonding company until July 30, 1976.

The notice provision controls the rights of the parties, particularly in a private bond case such as this. . . . Time runs from the date Vespe walked off the job. . . . Plaintiff knew Vespe had quit, and the general contractor at the time had notified plaintiff to come pick up its rental equipment. Plaintiff seeks to extend the period by attempting to collect charges for a small amount of equipment still being used at the job site by someone other than Vespe. This in no way extended the notice period. (citations omitted).

*Conesco, supra,* at 2.

## II.

■ We must first take issue with the district court's apparent misreading of the notice provision of the payment bond. The lower court read the provision so as to require that notice must be given to the general contractor *and* the bonding company. However, the provision requires otherwise.

3) No suit or action shall be commenced by any claimant:

a) Unless claimant, other than one having a direct contract with the Principal, shall have given written notice *to any two of the following: The PRINCIPAL, the OWNER, or the SURETY* above named, within ninety (90) days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail or certified mail, postage prepaid, in an envelope addressed to the *PRINCIPAL, OWNER or SURETY*, at any place where an office is regularly maintained for the transaction of business, or served in any manner in which legal process may be served in the State in which the aforesaid project is located, save that such service need not be made by a public officer. (emphasis added).

(J.A. at 13). Thus it is clearly seen that notice to the surety (Maryland) is not mandated by the notice provision, and that the plaintiff Conesco could have made adequate notice by notifying only the owner, HSL–DC, and the principal, C & E. The district court's interpretation of this provision was clearly erroneous and therefore grounds for reversal.

### III.

This Court must decide whether the law of the District of Columbia requires strict or more lenient adherence to the notice provisions in payment bonds. The district court held that the notice provision controls the rights of the parties and favored the strict doctrine as enunciated in *U. S. Plywood Corp. v. Continental Cas. Co.*, 157 A.2d 286 (D.C.Mun.App.1960), a case decided on Virginia law. We are of the general opinion that it is not the function of the courts to rewrite contracts and thereby negate the plain unambiguous language adopted by the contracting parties. We must ever guard against allowing sympathy for a party to produce a result contrary to the clear language of the contractual provisions before us even if done in the name of public policy.

The defendants stipulated at trial that the correspondence between Conesco and C & E in October and November of 1975 constituted notice to C & E (Appellant's Brief at 4), and that this notice was timely given. However, Conesco was not able to notify the surety, Maryland, until July 30, 1976, a period of more than 90 days from when Vespe walked off the construction site. This delay could have been the result of Conesco's difficulty in finding out if the project was bonded and the identity of the surety company, as is mentioned previously in this opinion. The record is unclear as to the exact date that the owner, HSL–DC, was notified of the Conesco's claim, but it does indicate that it knew by June of 1976.

Maryland argues that the notice provision must be strictly construed, and that Conesco's action is barred for failure to notify Maryland within 90 days from when Vespe walked off the job. If this provision *required* that notice be given to the surety within this period, we would agree with the appellee. However, the notice provision does not require this at all. It is possible

under the terms of this provision for notice to be given to the principal (C & E) and the owner of the project (HSL–DC) *with no notice going to the surety and the surety nevertheless being liable under the bond.* By not specifically requiring that notice must be given to the surety for all claims under the bond, Maryland did not make such notice to it a condition precedent to recovery against it. It should be remembered that Maryland drafted the payment bond in this case, and could have made notice to it a requirement for recovery, but that it failed to do so. It should not be allowed to complain at this time that Conesco failed to perform a duty that Maryland itself did not make a condition precedent for recovery under the bond.

■ Furthermore, we do not think that *Plywood* is directly applicable to the case at bar. This is a diversity action and under the well settled principles found in *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the law of the District of Columbia should apply.[2] *Plywood*, however, was decided through the application of Virginia law, the reason for this being that the contract in dispute in *Plywood* was both executed and performed in Virginia.[3] The use of Virginia law in that case was consistent with general conflict of laws theories dealing with contracts and suretyship.[4] However, in this case we have a surety contract executed in Maryland and entered into by a Maryland corporation and a District of Columbia corporation concerning a construction project to take place in the District. Since there is no District law on point, we should look to Maryland law first not only because the contract was executed there with a Maryland party, but also because the District of Columbia derives its common law from that state and because District of Columbia

---

**2.** See also, Fed.R.Civ.P. 81(e); 7 Part 2 Moore's Federal Practice ¶ 81.10[1] (2d ed. 1979).

**3.** *Plywood, supra,* at 287.

**4.** See generally, Restatement (Second) of Conflict of Laws §§ 6, 187–188, 193–194 (1971); H. Goodrich & E. Scoles, Conflict of Laws 201–07 (4th Ed. 1964); 16 Am.Jur.2d *Contracts* §§ 36, 38–42 (1964); 74 Am.Jur.2d *Suretyship* § 6 (1974).

**316**

courts have in the past looked to Maryland law for guidance.[5]

The historical reasons for the application of Maryland law in the District of Columbia is explained in 24 Am.Jur.2d *District of Columbia* § 10 (1966) which states the following:

> Under the terms of the acts of cession of territory by the states of Maryland and Virginia, to form the District of Columbia and of the congressional act of acceptance thereof, the laws of the two states respectively were to remain in force in the parts of the territory ceded by each until Congress should take upon itself the government of the District. The Act of Congress of February 27, 1801, which provided for the government of the District, declared that the laws of Maryland as they then existed, should continue and be in force in that part of the District which was ceded by that state, and a similar provision was made with respect to that part of the District that was ceded by Virginia. Consequently, the laws of Maryland as they existed in 1801 are in force in that part of the District which formerly belonged to Maryland, and since the act of retrocession by Congress to Virginia comprises the entire District of Columbia, subject to modifications by statutes of Congress, and as determined and developed by the courts of the District (footnotes omitted).

■ What this Court is stating is that since the remaining portion of the original District of Columbia does derive its common law from Maryland, and since the laws of Maryland as existed in 1801 may apply in the District (the law of Virginia not being applicable since the land it donated was retroceded to it), and since the law of Maryland has been looked to in the past for guidance, then it is appropriate in matters concerning the District for which there is no District of Columbia law, that the District of Columbia courts should look to the law of Maryland for guidance before it looks to the law of other states.

■ An expression of Maryland law is found in *New Amsterdam Cas. Co. v. U. S. Shipping Bd. Emergency Fleet Corp.*, 16 F.2d 847 (4th Cir. 1927). In that case, a supplier of shipbuilding materials sued the shipbuilder's surety for materials supplied to but not paid for by the shipbuilder. The surety raised the defense that it was discharged from its liability under the bond by reason of the plaintiff's failure to give notice of default to the shipbuilder. The United States District Court of Maryland found for the plaintiff against the surety, and this was affirmed on appeal. The Fourth Circuit Court of Appeals held against the defendant surety on the failure-to-give-notice argument, stating the following:

> [F]ailure to give notice of default in accordance with the terms of a condition contained in a fidelity or indemnity bond releases the surety from further liability thereunder. There can be no question that such is the law, but, as pointed out above, the bond sued on in this case does not incorporate a requirement for notice of default among the conditions of the bond.

> . . . . .

> As the giving of the notice of the default of the shipbuilding company was not made a condition precedent to liability under the bond, and as there is neither allegation nor proof that the defendant suffered any loss or damage by reason of the fact that plaintiff did not give the notice within a reasonable time, we think that, even if the contract be construed as requiring notice, failure to give same would not bar a recovery by plaintiff. It is the duty of the surety to see that the principal performs his contract in accordance with its terms and to perform it himself if the principal fails. . . . And even where there is a requirement of

5.  See, *Watkins v. Rives*, 125 F.2d 33, 35 (D.C. Cir. 1942); *Johnston v. Rodis*, 151 F.Supp. 345, 347 (D.D.C.1957), *reversed on other grounds*, 251 F.2d 917 (D.C. Cir. 1958); *Seidenberg v.*

*Seidenberg*, 126 F.Supp. 19, 22 (D.D.C.1955); *Calomeris v. District of Columbia*, 125 F.Supp. 266, 268 (D.D.C.1954), *affirmed*, 226 F.2d 266 (D.C. Cir. 1955).

notice, if this requirement is not made a condition of the bond, the surety company cannot complain of the failure to give notice where no damage has resulted therefrom. . . .

*Id.* at 851–52. For the same reasons as stated above, the surety in this case should not be allowed to escape from its liability under the bond. As we stated previously, since the surety did not expressly require in the surety agreement that it receive notice then notice cannot be considered as a condition precedent for recovery against it. Furthermore, we are in agreement with the proposition that the surety should not be able to use the failure to give notice as a defense against recovery under the bond when it has shown no prejudice or damage suffered as a result of the failure to give "adequate" notice.[6] We further think that by not requiring for notice to be given to it, Maryland made an admission at law that Conesco's failure to notify it within the 90-day period could not be considered prejudicial to it.

█ We are aware of the traditional rules of construction for surety bonds which state that a surety is not bound beyond strict construction of its contract, and that its liability should not be extended by implication beyond the terms of its contract. However, the law of Maryland and of other states is that in a case involving a compensated or corporate surety, the doctrine that the surety is the favorite under the law does not apply, and recovery under the bond is the preferred result.[7]

█ The argument could be raised that Conesco should be able to recover under the

bond *only* if it did in fact give notice to C & E and HSL–DC in the appropriate time period. The record shows that C & E did receive proper notice, but is unclear as to when HSL–DC first received notice. However, the question of when the owner first received notice is not of major importance in that under the agreement entered into between C & E and HSL–DC, notice to C & E is, in effect, notice to HSL–DC. Section 8.4 of the agreement provides the following:

> Contractor [Conesco] agrees to indemnify and save Owner [HSL–DC] harmless from any and all claims, lawsuits, actions, or proceedings arising during the course of the Work from Contractor's operations under this Agreement, and whether such operations be by the Contractor or by any Sub-Contractor, or by anyone directly or indirectly employed by any of them, or by anyone for whose acts any of them may be liable. The indemnification referred to herein shall, without limitation, include all costs, counsel fees, expenses and liabilities incurred in or about any such claims, lawsuits, actions or proceedings as aforesaid. Owner agrees to reimburse Contractor for any additional cost to Contractor of securing "hold-harmless insurance" covering Contractor's responsibility hereunder.

It can be seen that notice to HSL–DC is not that important if C & E was notified in time for C & E had agreed to indemnify HSL–DC. C & E thus stood in the shoes of HSL–DC. To allow this technical noncompliance to bar this action would be in effect

---

**6.** By requiring that the surety must suffer some prejudice, this Court is taking the minority stance on this issue. See, 10 Williston on Contracts § 1237 (W. Jaeger ed. 3d ed. 1967). However, there are still an impressive number of jurisdictions which require that prejudice must somehow be suffered by the surety. See, L. Simpson, Handbook on the Law of Suretyship 109–110, at n. 23 (1950).

**7.** Maryland cases supporting this proposition are: *Walsh v. Jefferson Sav. & Loan Ass'n*, 216 Md. 131, 139 A.2d 847, 850 (1958); *Lang v. Board of Ed.*, 183 Md. 255, 37 A.2d 317, 320 (1944); *American Fid. Co. v. Montpelier*, 128

Md. 50, 97 A. 12 (1916); *State v. National Surety Co.*, 126 Md. 290, 94 A. 916 (1915); *Burdette v. Lascola*, 40 Md.App. 720, 395 A.2d 169, 171 (1978).

This same proposition of law can be found in Virginia cases as well. See, *Century Indem. Co. v. Esso Standard Oil Co.*, 195 Va. 502, 79 S.E.2d 625, 630 (1954); *American Surety Co. v. Commonwealth*, 180 Va. 97, 21 S.E.2d 748, 751 (1942); *C. S. Luck & Sons v. Boatwright*, 157 Va. 490, 162 S.E. 53, 54 (1932); *Fidelity & Dep. Co. v. Mason*, 145 Va. 138, 133 S.E. 793, 795 (1926), *reversed on rehearing, National Surety Co. v. Hicklin*, 155 Va. 577, 155 S.E. 815 (1930).

requiring notice for notice's sake, and would result in serving no practical end.

Accordingly, the decision of the District Court is reversed and a judgment is awarded in favor of the plaintiff Conesco. We have decided not to remand this case to determine whether Maryland Casualty actually suffered some prejudice from lack of notice for the reason mentioned earlier that by not requiring that notice be specifically given to it, Maryland made an admission at law that lack of notice was not prejudicial to it.

WILKEY, Circuit Judge, dissenting:

This case involves a subtle point concerning ascertainment of state law by a federal court in a diversity case. Because I find this point of law controlling, and because the majority opinion goes counter to it, regretfully, I must dissent.

The pivotal issue to which I refer concerns the precedential effect of *United States Plywood Corporation v. Continental Casualty Company.*[1] This case, cited by the majority, is the only District of Columbia precedent on the substantive issue now before us, whether a surety can be held liable when the claimant does not give timely notice in accordance with a contractual notice provision.

Under the rule of *Erie V. Tompkins,*[2] we are to look to state law to decide the case now before us. Our jurisdiction is founded upon diversity; the controlling issue is nonfederal in nature; and because the contract at issue was formed in the District of Columbia, it is undisputed that the law of D.C. controls. Thus it is our task to ascertain what is the law of the District as to the substantive issue before us.

If the *U.S. Plywood* opinion were a clear holding as to D.C. law, our task would be simple. That case involved a contractual notice provision identical in substance to the one in the present case, with a claim against a surety by a subcontractor who had not given timely notice in compliance with the provision. The D.C. Court of Appeals held that strict compliance was a condition precedent, and that the lack of timely notice therefore barred the subcontractor's claim.[3]

The complication is that *U.S. Plywood* constitutes a holding as to Virginia law rather than D.C. law. Because the contracts in that case were executed and performed in Virginia,[4] choice of law principles dictated that the case be decided according to Virginia law. Thus the D.C. Court of Appeals opinion did not create a holding as to D.C. law.

But unlike the majority, I do not believe that this fact ends all possible relevance of the *U.S. Plywood* opinion. Where a federal court finds no holding of the highest state court, there are further steps it must take to see if there are other indications of how the highest state court would decide the issue. For example, decisions of lower state courts are to be given "proper regard" and are generally to be followed unless there is evidence that the highest court would rule otherwise.[5] In the present case, however, we have no D.C. lower court decisions on point.

A further step, of direct relevance here, is to see if there is a considered dictum of a state court that indicates how the highest state court would decide the substantive issue.[6] When the dictum is from the high-

1. 157 A.2d 286 (D.C.Mun.App.1960).

2. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

3. See 157 A.2d at 287-89.

4. See id. at 287.

5. See, e. g., Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct.

179, 85 L.Ed. 139 (1940); Six Companies of California v. Joint Highway District No. 13, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (1940).

6. See Mooney Aircraft, Inc. v. Donnelly, 402 F.2d 400, 405 (5th Cir. 1968); 1A Moore's Federal Practice 0.307[2] at 3093–97. Cf. In re Weeks' Will, 294 N.Y. 516, 63 N.E.2d 85, 87 (1945) (in ascertaining Florida law, the N.Y. Court of Appeals followed dicta of highest court of Florida which "were carefully considered and deliberately made").

est court of the state, and thoroughly reasoned and unequivocally expressed, a federal court must follow it. This point is established by *Nolan v. Transocean Air Lines*,[7] in which the federal district court, affirmed by the Second Circuit, had ascertained state law by reference to holdings of intermediate state appellate courts. The Supreme Court remanded for consideration in light of a "considered dictum" by the state supreme court, which went contrary to the lower court holdings.[8]

The degree to which dictum is controlling, as we have stated, depends on the thoroughness of reasoning, the explicitness and conclusiveness of expression, and the level of the state court expressing it. All these factors indicate the predictive value of the dictum as an indicator of how the highest state court would hold on the issue. A mere "chance expression" of dictum, by contrast, is to be given little weight.[9] Upon remand in the *Nolan* case, for example, the Second Circuit decided that the one-sentence state supreme court dictum, given without any reference to the lower court holdings, and without benefit of briefing on the issue, was not a reliable indication that the state supreme court wished to overturn the lower court line of decisions.[10] But the Supreme Court holding in *Nolan* clearly indicates that where a state supreme court dictum *is* thoroughly reasoned and considered, and thus represents a reliable indication of how that court would hold on the issue, then federal courts must follow the dictum, even where lower state court holdings are contrary. When no contrary lower court holdings exist, *Nolan* logically applies a *fortiori* to compel federal courts to follow a considered dictum.

With these precedents in mind, we must examine the *U.S. Plywood* opinion to assess its reliability as an indication of what the D.C. Court of Appeals would hold on the substantive issue before us. We find that the opinion speaks at considerable length on the issue of whether plaintiff must strictly comply with a notice provision in a surety contract.

The D.C. Court of Appeals opinion mentions at the outset that the contracts in question were executed and performed in Virginia, leaving the reader to infer, but not expressly stating, that Virginia law would apply. But rather than examine Virginia law at this point, the court immediately launches into a presentation of its own views on the issue. The opinion observes that courts of several states have relaxed requirements of strict compliance with notice provisions in surety contracts and have favored recovery for claimants under a surety bond where the surety was not prejudiced by lack of notice. The D.C. Court of Appeals *decisively rejects this view, based not on Virginia law, but rather on its own notion of wise policy and on its observation that the weight of authority holds* a surety contract notice provision to be a condition precedent to recovery.[11]

In expressing its own policy views, the Court of Appeals states that courts should not "circumvent the plain language and intent of the contracting parties," that a surety "is free to impose conditions on its liability so long as they are reasonable," and that courts should not adopt rules simply to impose liability on those in the business of insuring risks.[12] In a space of two pages the court expounds its own reasons for requiring strict compliance with the notice provision, *not once in this section mentioning or citing a single Virginia authority.*

Only in the final paragraph of its opinion does the court state, "we think our decision conforms to Virginia law," based on an analogy to the Virginia law of conditions precedent in liability insurance policies.

**7.** 365 U.S. 293, 81 S.Ct. 555, 5 L.Ed.2d 571 (1961) (per curiam).

**8.** *Id.* 295–96, 81 S.Ct. 557.

**9.** *See New England Mutual Life Ins. v. Mitchell*, 118 F.2d 414, 420 (4th Cir.), *cert. denied*, 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505 (1941).

**10.** *See Nolan v. Transocean Airlines*, 290 F.2d 904, 905–07 (2d Cir. 1961).

**11.** *See* 157 A.2d at 288.

**12.** *Id.* at 288–89.

But this is at most an afterthought, for the court states expressly that it has been unable to find any Virginia case in point and that none have been cited to it.[13]

The unavoidable conclusion from the body of the opinion is that the D.C. Court of Appeals clearly decided the case based on its own view of which rule of law was preferable. If technically it was deciding the case under Virginia law, then its expression of its own views states a very thoroughly considered, extensively reasoned, and unequivocally stated dictum as to its view of how it would decide a similar case as a matter of D.C. law. In our present task of trying to ascertain D.C. law, we could not ask for a more "considered" dictum in the absence of a state holding on point. If dictum is ever to play a decisive role in the ascertainment of state law, as the *Nolan* case indicates that it should, then the language of *U.S. Plywood* epitomizes a considered dictum of the highest court of a state which we are bound to follow.

There is no need, then, to look to the law of Maryland on the hypothesis that D.C. courts would follow Maryland precedent. Even if we did this, as the majority advocates, we could not conclude that Maryland is in the minority of jurisdictions which hold a surety excused for lack of timely notice only where the surety shows prejudice from the lack of notice. Although Maryland has renounced, at least as concerns sureties for profit, the ancient rule that the surety is the favorite of the law;[14] nevertheless the Maryland Court of Appeals has never required a surety to show prejudice before being excused for plaintiff's noncompliance with a clear contractual condition precedent. On the contrary, that court has held that a notice provision is "of the essence" of a surety contract, and that lack of timely notice bars recovery—without any inquiry as to whether the surety was prejudiced.[15] Based on that precedent, the *U.S. Plywood* court listed Maryland as among those states taking the majority position on this issue.[16] But the long and short of this matter is that rather than speculate about what Maryland would do, and whether D.C. would follow her lead, we do much better simply to follow the clear and considered dictum of the *U.S. Plywood* opinion.

Once we acknowledge that we are bound to follow the considered dictum of *U.S. Plywood*, the result in the present case follows simply and logically. The surety contract in the present case contains a notice provision identical in substance to that in *U.S. Plywood*. The provision in both cases requires notice within a certain ninety-day period to "any two of the following: The PRINCIPAL, the OWNER, or the SURETY above named."[17] Unless this condition is fulfilled, "No suit or action shall be commenced by any claimant."[18]

In *U.S. Plywood* the D.C. Court of Appeals has already stated that it believes this same contractual language to be an unambiguous condition precedent to a right of action.[19] Therefore "the surety had the right to stand upon the terms of the agreement and to exact compliance with them."[20]

In the present case, District Judge Gesell found that the plaintiff gave notice only to one of the required parties, the general contractor. Plaintiff did not give notice to the surety, Judge Gesell found, until after the notice period had expired.[21] No error has been demonstrated in these findings;

---

13. *Id.* at 289.

14. *See, e. g., Lange v. Board of Education*, 183 Md. 255, 37 A.2d 317, 320 (1944).

15. *See Levy to Use of Walbrook Mill & Lumber Co. v. Glens Falls Indemnity Co.*, 210 Md. 265, 123 A.2d 348, 352 (1956).

16. *See* 157 A.2d at 288 & n.8.

17. J.A. at 13; *see U.S. Plywood*, 157 A.2d at 287.

18. J.A. at 13; *see* 157 A.2d at 287.

19. 157 A.2d at 289.

20. *Id.*

21. *Conesco Indus., Ltd. v. Conforti & Eiseli, Inc.*, No. 77–0977, mem. op. at 2 (D.D.C. 24 Apr. 1978); J.A. at 10.

we must therefore conclude that plaintiff did not strictly comply with the provision and thus, under the reasoning of *U.S. Plywood*, has no right of action for recovery on the bond.

The *U.S. Plywood* dictum also answers the specific argument of the majority in the present case. First, the majority opinion adopts the minority position that a surety must show prejudice before raising lack of timely notice as a defense;[22] but the D.C. Court of Appeals expressly rejects this position as contrary to its ideas of good policy and law.[23] Second, the majority states that by requiring notice to only two of three named parties, the surety contract did not make notice to the surety a condition precedent to recovery.[24] In *U.S. Plywood*, however, the D.C. Court of Appeals faced the same requirement for notice to two of three named parties and reasoned simply that plaintiff must give notice to two of them as unambiguously required by the contract. *The fatal defect* in plaintiff's case here is not that plaintiff failed to give timely notice to the surety in particular, but that *it gave timely notice to only one rather than two of the required parties*. Since this action did not comply with the contractual notice provision, plaintiff's suit is barred under the reasoning of *U.S. Plywood*.

A further error now alleged against the district court opinion is that it stated that under the contract plaintiff must give notice to the general contractor and the surety.[25] This is indeed erroneous in omitting that plaintiff may give notice to the owner in lieu of one of the others. But it is important that the district court did not find, and we have no ground to suppose, that timely notice was given to the owner. In light of this fact, plaintiff's claim is barred as a practical matter if it did not give timely notice to both the general contractor and the surety. The district court's

statement, therefore, is at most a harmless error.

Finally on this issue, I cannot accept the majority's inference from contractual language that notice to the general contractor constituted notice to the owner.[26] This is a factual judgment as to the intended meaning of contractual language, to be made by the district court in the first instance, based on such factors as customary meaning of such provisions and intent of these parties; it is not properly open to us to draw such an inference now upon appeal.

One final, unrelated point deserves comment. The majority opinion states that the wording of the notice requirement in this contract constituted "an admission at law" that lack of notice was not prejudicial to the surety.[27] First, as a matter of fact a surety *could* be prejudiced by lack of notice, even though the contract required notice only to two of the three named parties. But more important, as a practical matter, is that this contract is a standard form contract used throughout the construction industry; so that the effect of the majority opinion is to say that whenever this standard contract is used, a surety can *never* be prejudiced by lack of notice and claimants need never concern themselves with giving notice to a surety. Entirely apart from the question of whether this interpretation comports with the intent of the parties to such a contract, I think it is important that parties understand that in the future, under the precedential effect of the majority opinion, their use of this particular form contract will be deemed to obviate the need to give notice to the surety.

I would affirm the result in the district court, and so I respectfully dissent.

22. Supra p. 317 & n.6.

23. 157 A.2d at 288.

24. Supra p. 315.

25. *Conesco Indus., Inc. v. Conforti & Eiseli, Inc.*, No. 77–0977, mem. op. at 2 (D.D.C. 24 Apr. 1978); J.A. at 10.

26. Supra p. 317.

27. *Id.* at 317–318.